UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>388 ROUTE 22 READINGTON HOLDINGS, LLC,<br><br>Debtor. | Civil Action Nos. 21-1244 (RK)<br>21-1246 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on two appeals filed by SB Building Associates Limited Partnership ("SB"), and a cross-appeal filed by Atkinson & DeBartolo ("A&D") and The Kelly Law Firm ("TKF"), of three fee-related decisions made by the Bankruptcy Court in its January 11, 2021 Memorandum Opinion (Case No. 18-30155, ECF No. 223). SB's first appeal (Case No. 21-1244) challenges the commission awarded to Bunce Atkinson as trustee. SB's second appeal (Case No. 21-1246) contests the Bankruptcy Court's fee award to TKF as counsel to the trustee. The cross-appeal (Case No. 21-1244, ECF No. 11) challenges the Bankruptcy Court's decision to deny the trustee an additional commission for disbursements made to its attorneys. The Court has carefully considered the parties' submissions, and for the following reasons, **AFFIRMS** each of the Bankruptcy Court's decisions.

I.  **BACKGROUND**[1]

SB Building Associates Limited Partnership ("SB") is the sole member of 388 Route 22 Readington Holdings, LLC ("the Debtor"). Lawrence Berger, Esq., acts on behalf of SB. Jay Lubetkin, of Rabinowitz, Lubetkin & Tully, is also appointed counsel for SB and appears to have represented SB in its own chapter 11 bankruptcy matter. In 2007, the Debtor obtained a purchase money mortgage from Iron Mountain Management, LLC, to acquire property located at 388 Route 22, Readington, NJ. The Debtor defaulted on that mortgage in 2009, and Iron Mountain initiated a foreclosure proceeding in New Jersey Superior Court. The foreclosure proceeding resulted in a foreclosure judgment in the amount of $1,658,021.90, entered on January 28, 2011. The Superior Court increased the judgment to $1,722,027.81 on March 16, 2011. Iron Mountain then scheduled a sheriff's sale for July 31, 2013.

On the day of the sale, 388 Route 22 Readington Holdings filed its first chapter 11 bankruptcy (Bankruptcy Case No. 13-26699). This resulted in a stay of the sheriff's sale of the property. The Debtor confirmed a plan of reorganization that provided for $2,200,000 in total payments to Iron Mountain for its secured claim, including a $1,325,000 lump sum payment due before January 15, 2016.[2] The Confirmation Order provided that in the event of default,

> (i) . . . all obligations owing to [Iron Mountain], including principal and all accrued and unpaid interest, fees, costs, charges and attorney's fees, shall accelerate and become immediately due and payable; and (ii) [Iron Mountain] shall be permitted (a) to proceed with any and all legal rights and remedies in accordance with the Judgments, the secured lien, the Plan, and the law.

---

[1] The following facts are derived from the many opinions issued during the course of this proceeding, including but not limited to Judge Ferguson's Memorandum Opinion currently at issue (ECF No. 223); Judge Ferguson's Letter Decision dated June 13, 2022 (ECF No. 288); Chief Judge Wolfson's Opinions dated July 27, 2020 (Case No. 20-1252, ECF No. 29) and December 23, 2021 (Case No. 21-1239, ECF No. 13); and the Third Circuit's June 29, 2023 Opinion (No. 22-1143).

[2] Unless otherwise noted, the facts detailing this reorganization and first bankruptcy proceeding derive from Judge Ferguson's Mem. Op. at 11–12.

2

The Confirmation Order further provided that in the event of default the Debtor "shall consent to, relief from any automatic stay imposed by § 362 of the Bankruptcy Code . . . ."

The Debtor ultimately defaulted, filing a second chapter 11 petition on October 9, 2018. Iron Mountain immediately sought prospective relief from the automatic stay based on what Judge Ferguson described as "continued chicanery" of the Debtor, SB, and associated entities. (Mem. Op. at 12–13.) Judge Kaplan held a hearing,[3] during which Lawrence Berger argued that he should not have to abide by the terms of the Confirmation Order because it would amount to an unenforceable *ipso facto* clause. Judge Kaplan disagreed and enforced the waiver provision, entering two orders that granted stay relief for 60 days and converted the case to chapter 7.[4]

On November 20, 2018, the day after the case was converted to chapter 7, Bunce Atkinson, Esq., ("Trustee") was appointed as the chapter 7 trustee. On December 6, 2018, A&D was appointed counsel for Trustee. A&D served as Trustee's attorneys until July 25, 2020, whereupon TKF became successor counsel for Trustee.

During the 60-day window provided by Judge Kaplan, Trustee was tasked with familiarizing himself with the case and determining whether the property had any value for the bankruptcy estate. The Trustee initially retained a broker to market the property. However, when the broker failed to produce a reliable contract for sale, the Trustee retained an auctioneer to sell the property. The property was ultimately sold at an auction for $3,200,000 in December of 2019.

On November 5, 2020, Judge Ferguson heard oral argument on three applications for compensation of Trustee, A&D, and TKF. Regarding the issue of Trustee commission, Judge

---

[3] Judge Ferguson took over the case in June of 2019 and the present appeals arise from her decisions.
[4] The Debtor appealed both orders and the District Court dismissed the appeal of the order granting stay relief. Debtor's request for a stay pending appeal was denied by the Bankruptcy Court, the District Court, and the Third Circuit Court of Appeals. *See* Mem. Op. at 13 nn.39–40.

Ferguson rejected SB's invitation to use a lodestar approach and instead applied the graduated percentage commission set forth in 11 U.S.C. § 326. (Mem. Op. at 3–14.) In evaluating whether the statutory commission's presumption of reasonableness should be rebutted, Judge Ferguson found:

> "[N]othing about this case, the trustee's actions, or the auction results make this case extraordinary. The Objectors have presented no new information that would lead this court to conclude that the trustee in this case deviated from the professional standards of a trustee thereby justifying the court reducing his statutory commission. The only arguably extraordinary thing about this case is the Objectors' unrelenting adherence to their false, self-serving narrative."

(*Id.* at 10.) Judge Ferguson awarded the Trustee the full statutory commission of $116,737.45 and costs of $49.85. (*Id.* at 28.)

TKF, as successor counsel to the Trustee, sought fees amounting to $54,240 and $1,552.85 in expenses. (*Id.* at 24.) SB objected on the grounds that, among other things, the services did not benefit the estate and exceeded the scope of the retention order. (*Id.*) Judge Ferguson rejected the objectors' proposed standard and instead evaluated whether the services performed were reasonable under the circumstances. (*Id.* at 26.) Reviewing TKF's actions during the proceedings, Judge Ferguson found that "[t]here is not a single entry in the application of [TKF] that suggests that the services were rendered without a reasonable basis in fact or law or with the intent to advance the interests of anyone other than the creditors of this estate." (*Id.*) Relying on her experience with the fees commonly charged by bankruptcy professionals, and her assessment of the complexity and quality of the work product, Judge Ferguson found Mr. Kelly's hourly rate of $450 to be reasonable. (*Id.* at 26–27.)

Currently before the Court are two appeals by SB disputing the commission and fees awarded to Trustee and TKF.[5] Also before the Court is a cross-appeal by A&D and TKF contesting the bankruptcy court's denial of Trustee's commission request for disbursements made to his own attorneys.

## II. LEGAL STANDARD

A district court has jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). When sitting as an appellate court reviewing a decision of the bankruptcy court, the district court "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130–31 (3d Cir. 1998)). "Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir. 1995) (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir. 1994)). The question of the appropriate legal standard to calculate the Trustee commission is a question of law

---

[5] SB also filed two other appeals contesting fee and commission distributions in the same bankruptcy proceeding, which the Court does not resolve in this Opinion. SB also appealed Judge Ferguson's determination with respect to the legal fees payable to Trustee's former law firm, A&D. This matter was docketed as Case No. 21-1239 and resolved by Chief Judge Wolfson, who, in an opinion dated December 23, 2021, affirmed the Bankruptcy Court's decision but modified the fee award to upwardly adjust for a calculation error on the part of A&D. (*See* ECF No. 13.) SB appealed again, and on June 29, 2023, the Third Circuit affirmed.

The second appeal relates to SB's appeal of Judge Ferguson's decision determining that (1) the award of $41,000 in paralegal fees was "reasonable", and (2) the Trustee (rather than Iron Mountain) should pay the sheriff's fee of $46,791.91 for the foreclosure sale. (Case No. 22-4275.) This matter will be resolved through a separate opinion.

5

to be reviewed *de novo*. *See Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991).

### III. DISCUSSION

#### A. TRUSTEE COMMISSION[6]

Pursuant to 11 U.S.C. § 330(a)(1), "the court may award to a trustee . . . (A) reasonable compensation for actual, necessary services rendered by the trustee . . . ; and (B) reimbursement for actual, necessary expenses." Section 330(a)(7) further provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." This section provides, in relevant part,

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

At issue in this appeal is when the bankruptcy court may or ought to find the statutory commission set forth in section 326 unreasonable and reduce the chapter 7 trustee's commission. Appellant SB urges the Court to conclude that the section 326 commission "can be overcome just like any other presumption in the law" (ECF No. 8 at 13) and seeks the Court to review the Trustee's compensation in light of the time spent on relevant services, i.e., applying the section 330(a)(3) factors (*see id.* at 14–17). While the Third Circuit has yet to address the issue, each of

---

[6] Citations to docket entries in sections A and B of this Opinion reference those made under Case No. 21-1239.

the Circuit Courts of Appeals to have considered the issue have found that the 2005 amendments to the Bankruptcy Code express a congressional intent to remove chapter 7 trustees from the 330(a)(3) factors altogether. For the reasons discussed further herein, this Court agrees and accordingly holds that the percentage commission under section 326 must be considered presumptively reasonable and may be reduced only in extraordinary circumstances.

Prior to 2005, section 330(a)(3) required courts to evaluate the compensation of all trustees under a six-factor test to determine reasonableness of the award.[7] In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BACPA") amended section 330(a)(3) to explicitly reference only chapter 11 trustees. The BACPA amendments also added section 330(a)(7), which instructed that courts "shall treat such compensation as a commission" and linked the reasonableness determination for chapter 7 trustees to section 326.

These amendments led courts to question the applicability of section 330(a)(3) to chapter 7 trustees. In *In re Salgado-Nava*, the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") held that

> [A]bsent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7) and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances.

473 B.R. 911, 921 (B.A.P. 9th Cir. 2012). The BAP further explained,

> when confronted with extraordinary circumstances, the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis. But bankruptcy courts

---

[7] Those factors included, among others, the time spent on relevant services, the rates charged for those services, whether the services were necessary or beneficial to the administration of the case, and whether the rates charged were "reasonable" given customary compensation charged by comparably skilled practitioners.

7

> still must keep in mind that tallying trustee time expended in performing services and multiplying that time by a reasonable hourly rate ordinarily is beyond the scope of a reasonableness inquiry involving commissions.

*Id.*

Two years later, the Fourth Circuit considered the issue in *In re Rowe*, 750 F.3d 392 (4th Cir. 2014), and came to the same conclusion as the BAP in *Salgado-Nava*. The Fourth Circuit interpreted the 2005 BACPA amendments to instruct that "absent extraordinary circumstances, Chapter 7 trustees must be paid on a commission basis, as required by 11 U.S.C. § 330(a)(7))." *Id.* at 394. Moving forward, "bankruptcy courts will be required to make the determination of whether extraordinary circumstances exist in a Chapter 7 action on a case-by-case basis[,]" using the United States Trustee Handbook and the "customs and practices of other Chapter 7 trustees" as guidance. *Id.* at 397. In such circumstances, "the bankruptcy court may reduce the fee, pursuant to [section] 330(a)(2)," and in doing so make "detailed findings of fact explaining 'the rational relationship between the amount of the commission and the type and level of services rendered.'" *Id.* at 398–99 (quoting *In re Salgado-Nava*, 473 B.R. at 921).

In 2018, the Fifth Circuit reached the same conclusion as the Ninth and Fourth Circuits in *Lejeune v. JFK Cap. Holdings, L.L.C. (In re JFK Cap. Holdings, L.L.C.)*, 880 F.3d 747 (5th Cir. 2018). There, the Court held that "the percentage amounts listed in Section 326 are presumptively reasonable for Chapter 7 trustee awards." *Id.* at 753. Any deviation from the statutory commission "should be a rare event." *Id.* at 755. The Court emphasized that "exceptional circumstances can alter the compensation but 'exceptional' is the key." *Id.* at 756.

Despite the growing consensus of Circuit Courts on the rule articulated above, SB characterizes this approach as "the minority view." (ECF No. 8 at 8.) Yet to apply an ordinary reasonableness presumption and evaluate the Trustee's time spent, as SB seeks the Court to do,

8

would undermine Congress's intent in codifying the BAPCPA amendments. Indeed, as the Circuit Courts to examine the issue have observed, the explicit addition of the word "commission" — combined with the removal of chapter 7 trustees from the 330(a)(3) compensation scheme — indicates that the trustee award should not necessarily be tied to hours expended. *See In re JFK*, 880 F.3d at 754 ("While compensation denotes a proportionality or connection between benefits received and services rendered, the shift to a commission-based approach signals congressional intent to award fees based on percentage."); *In re Wilson*, 796 F.3d 818, 821 (7th Cir. 2015) (noting that "a 'commission' is a payment for a specific service rather than being based, as in the case of a salary, on number of hours worked"); *In re Salgado-Nava*, 473 B.R. at 921 ("But bankruptcy courts still must keep in mind that tallying trustee time expended in performing services and multiplying that time by a reasonable hourly rate ordinarily is beyond the scope of a reasonableness inquiry involving commissions."). As the Court in *In re JFK* noted, "habitual judicial review of the statutory commission for reasonableness would run counter to BAPCPA's statutory scheme in which bankruptcy professionals cannot be compensated for time spent litigating their fees." 880 F.3d at 755; *see also Mohns, Inc. v. Lanser*, 522 B.R. 594, 598 (E.D. Wisc.), *aff'd sub nom. In re Wilson*, 796 F.3d 818 (7th Cir. 2015) (finding that a bankruptcy court should not "grad[e] the trustee's performance").

Accordingly, this Court finds that section 326 marks the starting point for a chapter 7 trustee commission and is considered presumptively reasonable. From there, the bankruptcy court may reduce the trustee's commission if it finds that the case in question is the rare instance where extraordinary circumstances warrant reduction pursuant to, e.g., section 330(a)(2). If the court finds that such circumstances exist, it should articulate detailed factual findings explaining the

"rational relationship between the amount of commission and the type and level of services rendered." *In re Rowe*, 750 F.3d at 399; *In re Salgado-Nava*, 473 B.R. at 921.

In the case at bar, the Bankruptcy Court applied precisely the standard that the Court has articulated herein. Judge Ferguson ruled that "under § 330(a)(7), the graduated percentage commission of § 326 must be considered a presumptively reasonable compensation for a chapter 7 trustee and, in all but the most extraordinary cases, courts should not apply an hourly rate lodestar analysis." (Mem. Op. at 4–5.) Judge Ferguson elaborated,

> That does not mean that this court takes the position that reasonableness has no role . . . . At the end of the day, whatever commission is awarded to a trustee must be reasonable because that word is contained in §§ 330(a)(1), 330(a)(7) and 326. But the way reasonableness comes into play is not by ignoring the express terms of § 330(a)(7), but rather by deviating from the commission only in the rare cases when the amount of the commission is offensive based on the particular circumstances of the case. Indeed, the presumption that the § 326 commission is reasonable is not a guarantee, and courts retain the right under § 330(a)(2) to reduce the commission to less than the statutory maximum in extraordinary circumstances.

(*Id.* at 6–7.)

Having found that the bankruptcy court applied the appropriate standard, the Court reviews Judge Ferguson's factual findings for clear error. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir. 1995). In that regard, Judge Ferguson found that "nothing about this case, the trustee's actions, or the auction results make this case extraordinary. The Objectors have presented no new information that would lead this court to conclude that the trustee in this case deviated from the professional standards of a trustee . . . ." (Mem. Op. at 10.) The Court agrees. The record reflects that the Trustee first attempted to use a broker to initiate the sale of the property; then, upon the broker's failure to produce a viable contract, the Trustee retained an auctioneer to sell the property, which ultimately produced a sum of money to pay all creditors in full. As Judge

Ferguson remarked, "[t]hose actions are precisely what section 704 of the Bankruptcy Code envisions when it states that a trustee shall 'reduce to money the property of the estate for which such trustee serves.'" (Mem. Op. at 8 (quoting 11 U.S.C. § 704(a)(1)).)

SB attempts to characterize trustee's efforts as primarily ministerial, detrimental to the overall sale value, and "misdirected" and "fanciful," particularly with respect to the so-called sewer capacity litigation. (*See* ECF No. 8 at 14–16.) This Court joins Judge Ferguson and Chief Judge Wolfson in disagreeing with SB's depiction of the record. To quote Judge Ferguson,

> [i]t is *only* if the sewer capacity litigation were successfully concluded in the Debtor's favor that the Property could possibly be sold for the $5 million or above value that the Objectors claim it had and which formed the basis of the Objectors' belief that the Trustee was derelict in his duties by selling the Property at auction for $3 million. It is one of the many examples of the principals of the Debtor wanting to have their cake and eat it too.

(Mem. Op. at 23.) *See also In re 388 Route 22 Readington Holdings, LLC*, No. 21-1239, ECF No. 13 at 14 (Wolfson, C.J.) (noting that "as the Bankruptcy Court appropriately found, the communications with counsel in the sewer litigation were critical in assisting the Trustee to obtain the most value in dispensing of the Property . . . .").

In summary, the record plainly reflects that the Trustee not only performed the duties required of him but generated sufficient proceeds to enable both the creditors and the Debtor to recover from the proceeds. It was necessary — both in this Opinion and in Judge Ferguson's opinion — to document the long and fraught history of the underlying proceedings to understand the Trustee's value to the instant action. Indeed,

> This long history is necessary to make the point that this property was only able to be sold by the chapter 7 trustee because Judge Kaplan allowed a 60-day window in which it would hold Iron Mountain's stay relief in abeyance so that the newly appointed chapter 7 trustee could familiarize himself with the case and decide if the property had any value for the bankruptcy estate. Further

11

> agreements between the Trustee and Iron Mountain to extend the automatic stay are what ultimately led to the auction sale of the property in December 2019 and produced the pot of money to pay creditors in full and produce a small return for the Debtor. Because this Debtor had agreed to future stay relief back in 2015, the auction of this property (as opposed to a sheriff's sale, which would have resulted in a return to no one but Iron Mountain) was a gift to the Debtor.

(Mem. Op. at 13.) Accordingly, the Court finds no reason to disturb Judge Ferguson's well-reasoned conclusion that the Trustee's commission requested pursuant to section 326 was reasonable and did not warrant reduction. (*See* Mem. Op. at 7.)

### B. THE KELLY FIRM'S CROSS-APPEAL

TKF, on behalf of A&D and Trustee, filed a cross-appeal arguing that the Bankruptcy Court erred as a matter of law in denying the Trustee a three-percent commission based on disbursements made by the Trustee to his attorneys A&D and special counsel TKF. (ECF No. 11 at 5–6, 25.) The Court reviews this issue *de novo*.

Section 326(a) provides that a trustee is entitled to a commission "upon all moneys disbursed or turned over in the case by the trustee to parties in interest . . . ." The term "parties in interest" is not defined by the Bankruptcy Code. However, section 1109(b), which discusses a party's right to be heard in a chapter 11 bankruptcy matter, enumerates several examples of a "party in interest." 11 U.S.C.S. § 1109(b). These include "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee[.]" *Id.* "The list of potential parties in interest in § 1109(b) is not exclusive." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011).

TKF seeks the Court to find that a trustee's professionals, particularly his counsel, should be covered under the term. TKF's brief cites to courts outside our Circuit that have adopted an "expansive view" of "parties in interest." (ECF No. 11 at 27–28.) Those courts define the term to

12

include an "entity to whom distribution of estate assets is legitimately made in furtherance of the overall distribution process contemplated in bankruptcy," or "an entity that holds a claim against the bankruptcy estate or who is entitled to an administrative expense in the state." (*Id.*, citing *In re Citi-Toledo Partners, II*, 254 B.R. 155, 163 (Bankr. N.D. Ohio 2000); *In re Market Resources Dev't Corp.*, 320 B.R. 841, 847 (Bankr. E.D. Va. 2004).)

This Court will not adopt this expansive definition of a "party in interest," deferring of course to the Third Circuit's use and understanding of the term, which this Court believes makes particular sense in the context of a trustee's attorneys. The Third Circuit has defined "party in interest" as "one who 'has a sufficient stake in the proceeding so as to require representation.'" *In re Glob. Indus. Techs. Inc.*, 645 F.3d at 210 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). It is self-evident that the definition seeks to cover those persons — like the debtor, trustee, or creditor — that might *require* representation. To interpret this definition to include an attorney, i.e., the person providing the representation, does not appear consistent with the Third Circuit's understanding of the term "party in interest" and invites its own issues of absurd recursion. (E.g., would the representation now require its own representation? Should the trustee receive a commission for each attorney's attorney too?) Such an interpretation is unwise in the context of a trustee's attorneys as it would invite inappropriate double-dipping. Here, for instance, the Trustee hired his former law firm (A&D) as his initial counsel and his current law firm (TKF) as his special counsel. (*See* Mem. Op. at 15 n.45.)

For these reasons, the Court affirms the Bankruptcy Court's decision to exclude a trustee's attorneys from the scope of the term "parties in interest" and thereby deny the Trustee a three-percent commission on the funds distributed to his attorneys.

### C. THE KELLY FIRM'S FEE AWARD[8]

TKF sought fees totaling $54,240 and expenses in the amount of $1,552.85. (Mem. Op. at 24.) SB objected on the grounds that TKF billed for work that (1) should have been performed by the Trustee, (2) exceeded the scope of retention, and (3) did not benefit the bankruptcy estate. (ECF No. 6 at 6.) On appeal, SB does not dispute the bankruptcy court's articulation of the legal standard but rather argues that Judge Ferguson erred in her application of the standard to the facts. (*Id.*) The Court therefore reviews SB's appeal of TKF's fee award for abuse of discretion. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir. 1995) (citation omitted).

A bankruptcy court may award attorneys employed as trustee's professionals "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). "The rule requires the bankruptcy court to determine the amount of reasonable compensation by considering such factors as the time spent on services, the rate charged by the professional seeking fees, and whether the services were 'necessary' or 'beneficial at the time of the service' to the administration of the estate." *Am. Ctr. for Civil Justice v. Katchen*, No. 19-18115, 2020 WL 4060178, at *5 (D.N.J. July 20, 2020) (citing 11 U.S.C. § 330(a)(3)).

The fee applicant bears the burden of proving that the requested fees are reasonable, and it must provide sufficient detail for the court to be able to reach an informed decision. *Id.* at *6 (citing *Zolfo*, 50 F.3d at 260). In reviewing the application, the bankruptcy judge may use her "experience with fee petitions and his or her expert judgment pertaining to appropriate billing practice" to determine whether the application is reasonable. *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 854 (3d Cir. 1994). However, "[b]ecause its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the

---

[8] Citations to docket numbers in this section of the Opinion refer to entries made in Case No. 21-1246.

14

professional is ideally entitled." *Id.* at 845; *see also In re 388 Route 22 Readington Holdings, LLC*, No. 22-1143, 2023 WL 4249266, at *3 (3d Cir. June 29, 2023) ("[A]dequate reasoning for a fee award need not be accompanied by a precise computational breakdown.").

In the case at bar, the Bankruptcy Court observed that — prior to the July 25, 2020 order appointing TKF general counsel to trustee and expanding the scope of retention — the "overwhelming majority" of time entries submitted by TKF "relate directly to defending the appeals in the District Court and Third Circuit Court of Appeals." (Mem. Op. at 24.) SB does not contest that these entries were directly within the scope of retention. (ECF No. 6 at 10.) The remaining entries involved "closing on the sale and the impact of a lis pendens, both of which relate directly to the concept of equitable mootness." (Mem. Op. at 24.) In finding the entries reasonable, the Bankruptcy Court noted that "this was an extensively litigated case, and the parties appeared to have engaged in settlement efforts during the appeal process. An appellate lawyer must be fully versed with not only the history of the case, but all pending activity that may possibly be relevant to settlement efforts." (*Id.*) Finally, after determining the entries reasonable, the Bankruptcy Court concluded that the proposed hourly rates were also appropriate given counsel's credentials and the Court's familiarity with the market rates. (*Id.* at 27–28.)

The Court finds no error in the Bankruptcy Court's finding that TKF's hourly billing rates were reasonable in this case. The name partner of the firm, Mr. Kelly, billed at a rate of $450 (Mem. Op. at 26). (SB also notes that TKF overall billed at an "average effective hourly rate" of $328 [ECF No. 6 at 11], and the bankruptcy judge noted that Mr. Kelly's rate was approximately $75 under the rate charged by SB's less experienced counsel [Mem. Op. at 27].) The bankruptcy judge applied several factors to determine the reasonableness of the proposed rate, including her experience with the fees commonly charged by bankruptcy professionals, her assessment of the

complexity and quality of the work product, and her review of each professional's experience and accomplishments. (Mem. Op. at 26–27.) In short, the Bankruptcy Court carefully reviewed the TKF's proposed rate and explained its conclusions such that reviewing courts could evaluate its rationale. Its reasoning was consistent with the factual record and comported with the standards articulated by the Third Circuit in *Busy Beaver*, *Zolfo*, and *388 Route 22 Readington Holdings*, discussed *supra*. Thus, the Court finds no error or abuse of discretion with respect to the hourly rate.

Regarding TKF's time spent on services, the Court finds that the Bankruptcy Court did not abuse its discretion in determining that these services constituted legal services within the scope of TKF's retention. This Court defers to the Bankruptcy Court's factual findings, "particularly with regard to the Bankruptcy Court's determination of what constitutes Trustee work, since the Bankruptcy Court is in the best position to do so." *388 Route 22 Readington Holdings, LLC v. Atkinson*, No. 21-1239 at 12 (D.N.J. Dec. 23, 2021) (Wolfson, C.J.) *aff'd* No. 22-1143, 2023 WL 4249266 (3d Cir. June 29, 2023). Under this standard, SB has not met its burden in showing that the Bankruptcy Court abused its discretion. In support of its argument, SB lists time entries that purportedly exceeded TKF's scope of representation, including "work on 'sale closing issues'", "research regarding Iron Mountain's motion", and "reviewing the sale closing documents and open title issues." (ECF No. 6 at 5.) However, merely pointing to certain categories of services and calling them "duplicative" of the Trustee's or A&D's work does not on its face establish that those services were improper for TKF to perform, particularly as appellate counsel (and shortly thereafter general counsel) against such a litigious adversary. (*See id.* at 5.) Such bare assertions are insufficient to establish an abuse of discretion on appeal. *See In re 388 Route 22 Readington Holdings, LLC*, No. 22-1143, 2023 WL 4249266, at *4 (3d Cir. June 29, 2023).

SB also claims that TKF's actions in seeking to vacate the notice of lis pendens and opposing various creditors' motions to dismiss the case "could not have provided any benefit to the estate." (ECF No. 6 at 5.) Again, the inquiry regarding the litigation services for the trustee's professionals is not solely whether they benefit the estate but whether the service was "necessary or beneficial at the time of the service to the administration of the estate." *Am. Ctr. for Civil Justice v. Katchen*, No. 19-18115, 2020 WL 4060178, at *5 (D.N.J. July 20, 2020) (citing 11 U.S.C. § 330(a)(3)). This does not necessitate that the services provided an actual benefit or appear unwise in hindsight. *See In re Jankowski*, 382 B.R. 533, 545 (Bankr. M.D. Fla. 2007); *In re Tri-State Plant Food Inc.*, 273 B.R. 250, 259 (Bankr. M.D. Ala. 2002); *In re Vista Foods USA, Inc.*, 234 B.R. 121, 130 (Bankr. W.D. Okla. 1999).

The Court finds that SB has also failed to establish that the Bankruptcy Court abused its discretion in finding that TKF's services were necessary or beneficial to the administration of the estate and therefore warranted compensation. Pursuant to 11 U.S.C. § 704(a)(1), trustees have a duty to close the estate as expeditiously as is compatible with the best interests of the parties in interest. As previously discussed, TKF was initially retained on February 14, 2020, as special counsel to the Trustee to contest SB's appeal of the sale order. On March 5, 2020, the day after the sale closed and notwithstanding the denial of all three of SB's emergency applications for stay, SB filed a notice of lis pendens with the Hunterdon County Clerk and continued to proceed with its appeal of the sale. *See* Case No. 20-1252, ECF No. 21, Ex. E. On July 25, 2020, Trustee sought to expand the scope of TKF's retention to general counsel for the Trustee. *Id.* at ECF No. 179. Two days thereafter, Chief Judge Wolfson granted the Trustee's motion to dismiss the sale appeal and ordered that SB's notice of lis pendens be discharged. *Id.* at ECF No. 29. When SB later appealed A&D's fee award, Chief Judge Wolfson reduced A&D's compensation in large part *because* the

hours billed regarding the lis pendens were more appropriately attributed to TKF's scope of representation. *In re 388 Route 22 Readington Holdings, LLC*, No. 21-1239, at 17 (ECF No. 29).

In summary, TKF's actions in defending against SB's unending appeals and efforts to thwart the sale — which ultimately compensated all creditors and even produced a remainder for the Debtor — were plainly reasonable to the administration and closure of the estate and within the scope of TKF's retention. The Bankruptcy Court held as much, and SB has not shown that the Bankruptcy Court "fail[ed] to apply the proper legal standard or to follow proper procedures in making the determination, or base[d] [the] award upon findings of fact that are clearly erroneous." *Zolfo*, 50 F.3d at 257.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decisions are AFFIRMED, and the appeals under Case Numbers 21-1244 and 12-1246 are DISMISSED.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 10, 2023